Day, L
At the January term, 1870, of the court of common pleas of Muskingum county, Jeremiah C. Wolf was indicted (with two others) for manslaughter, and on a separate trial was convicted and sentenced.
It is sought to reverse the judgment of that court for error in overruling a motion to quash the indictment and a motion in arrest of judgment, and for error in the charge to the jnry.
The motion to quash and that in arrest are based on the alleged insufficiency of the indictment.
The indictment, omitting the caption and conclusion, is as -follows: “ Jeremiah C. Wolf, on--, at -, one Samuel Lee, then and there being, did unlawfully kill and slay.”
The indictment is in accordance with the 92d section of the Code of Criminal Procedure, which is as follows :
“ In an indictment for manslaughter, it shall not be necessary to set forth the manner in which, or the means by which, the death was caused; but it shall be sufficient to charge that the defendant did unlawfully kill and slay the deceased.”
But it is claimed that this section is repugnant to the 10th section of the 1st article of the constitution of the State, which provides that no person shall be held to answer for crimes of this grade, “ unless on presentment or indictment of a grand jury,” and that the accused shall be allowed “ to demand the nature and cause of the accusation against him, and to have a copy thereof.”
*255 The grounds of objection are, that an accusation in the form prescribed by the statute would not be' an “ indictment” within the meaning of the constitution, and that a copy thereof would not inform the accused of “ the nature and cause of the accusation against him.”
It is claimed that the term “ indictment ” is used in the constitution in the sense in which it was understood when that instrument was framed, and that, therefore, it requires such form of accusation as met the requirements of an indictment at that time. The real question, then, is, not whether the legislature may provide for the prosecution of crimes without the intervention of a grand jury, but whether it may prescribe the forms of indictments, and dispense with the formalities requisite when the constitution was framed.
The same question was made in the case of Lougee v. The State (11 Ohio, 68), upon a construction of a clause in the constitution of 1802, which was substantially the same as the one under consideration contained in the present constitution. It was said in the opinion delivered in that case, that “ this clause in the constitution has nothing to do with the particular forms of indictments. These forms will vary according to the nature of the criminal acts prohibited. The legislature have the power to declare what acts are criminal, and they have the same power to prescribe the forms of indictments for the commission of such criminal acts. They cannot dispense with the indictment itself, but they can dispense with some of its technical formalities.”
This clause in the old constitution having received a judicial construction before it was adopted in the one now in force, it is but reasonable to presume that the framers of the present constitution understood and used it in the sense that had been thus given to it in the instrument from which it was substantially copied.
An indictment, then, within the meaning of the constitution, is nothing’ more than what it is defined to be by Blackstone (4 Com. 302), — “a written accusation, of one or more persons, of a crime or misdemeanor, preferred to, and presented by, a grand jury, upon oath.” A written charge *256 against the accused, presented by a grand jury, upon oath, in the form prescribed by the section of the code under consideration, would contain an accusation of the crime of manslaughter, and would, therefore, be an indictment within the meaning of the constitution.
Nor do we think the section is in conflict with the constitutional provision that the accused may “ demand the nature and cause of the accusation against him ; ” for an indictment in the form prescribed therein would set out the crime laid to his charge, and thereby exhibit “ the nature and cause of the accusation against him.” The manner in which the crime was committed is “ entirely apart from the nature and cause of the accusation.” Cathcart v. The Commonwealth, 37 Penn. St. Rep. 108.
Since, then, this section of the criminal code is not repugnant to the constitution, and the indictment was drawn in strict conformity with its provisions, it follows that the court did not err in overruling the motions attacking the validity of the indictment.
The chief objection to the charge to the jury is made upon what the court gave as the law relating to arrests by an officer without a warrant. The alleged crime was committed by the accused, it was claimed, while in the attempt to arrest the deceased, without a warrant, for the crime of keeping a house of ill-fame, or for a violation of the statute against amalgamation. It was essential for the prosecution to show that the accused was “ in the commission of some unlawful act ” when he killed the person charged to have been slain. It was also material for the defence to justify the transaction in which the accused was engaged when the fatal result occurred. It therefore became material that the jury should be informed by the court as to what the law is, in relation to arrests for crime by officers without a warrant.
The record does not purport to show all the evidence given at the trial, but enough is disclosed to show that the charge complained of was material and.necessary. Of the truth of the facts claimed, of course, we cannot judge, nor is it necessary that we should. It is sufficient that the record shows *257 that the evidence tended to prove that- the accused was marshal of the city of Zanesville, where the alleged crime was committed; that the deceased was in the commission of an act made criminal by statute; that the accused (with other officers) was attempting to arrest him for such crime; that the official character of the accused was- known to the deceased; that he knew the cause of the attempted arrest, though the officers gave him no notice thereof; that he forcibly and by means of firearms resisted the arrest; that the deceased was shot and killed by the accused while he was attempting to apprehend him. Evidence was also given by one side or the other tending to rebut many of the foregoing points.
The charge, so far as material to the question to be considered, was, that the officers might “ arrest tqq, first notifying him for what purpose they claimed to arrest him ; ” that if they attempted to arrest him, “ without his having notice for what offence they proposed to arrest him, he had a legal right to protect his premises from intrusion, and his person from arrest;” that if he was guilty of an offence, “such resistance by him would be illegal, so soon as- they notified him that they proposed to arrest him for the actual crime he was then committing; ” and that, “ if he was guilty, he might legally resist arrest until notified of the charge upon which they claimed to arrest him, and if not guilty of the charge made and notified to him by them, he might legally continue-his resistance, and the attempt to arrest him would be unlawful.”
The point especially urged as error is, that the attempt to-arrest the deceased was unlawful, unless he was notified of the charge upon which the officer claimed to arrest him. It is noticeable that no qualification was made to this point in the charge, though it- should be found that no demand was made for the cause of the arrest, that the cause was-known to the deceased, and that he resisted, and gave no opportunity for stating why the arrest was about to be made.
We think the com-t erred in instructing the jury, without qualification, that the accused was in the commission of an *258 unlawful act, if he attempted to arrest the deceased without first notifying him of the cause of the attempted arrest.
The 142d section of the municipal code (66 O. L. 113) provides that the city marshal “ shall arrest any person in the act of committing any offence against tire laws of this State or the ordinances of the corporation, and forthwith bring such person before the mayor or other competent authority, for examination or trial.” The next section provides that, in the discharge of his proper duties, he shall have like .powers as sheriffs and constables. It is also provided by the 21st section of the criminal code, that “ every sheriff, deputy .-sheriff, constable, marshal or deputy marshal, watchman or .police officer, shall arrest and detain any person found violating any law of this State, or any legal ordinance of any •city or incorporate village, until a legal warrant can be obtained.” 66 O. L. 291.
Here is ample statutory power conferred upon the officers named, to arrest, without warrant, persons “ in the act of committing an offence against,” or “ found violating,” the laws of the State. Nor is the power thus conferred expressly confined to any grade of offences.
Whatever may be thought about the power to arrest, without a warrant, for the crime of keeping a house of ill-fame, !by reason of the necessarily continuous character of that of-fence, or of the want of evidence in the case tending to prove that crime, there was at least evidence tending to prove that .Lee was- “ found violating ” the “ act to prevent the amalgamation of the white and colored races; ” and, if that were so, ihe might be lawfully arrested by the proper officer, without ta warrant.
But the question turns upon the mode of arrest: that is ¡not prescribed by statute. Nor are there any preliminary conditions prescribed, other than that the offender must be it£ in the act of committing an offence against,” or be “ found .violating,” the law.
There would seem to be no reason for requiring other preliminaries to the exercise of this statutory power where the ¡office]’ is known, for, from the existence of the circumstances *259 which authorize the arrest, its cause must be known, as muck as if especially stated to the offender.
But if the manner of the arrest is to be determined by the recognized rules of the common law, where the arrest is expressly authorized by statute, the result will be the same. Nor is there any good reason, so far as the offender is concerned, for any distinction in the mode of the arrest, whether it be for a felony or a crime of a less grade. The object of the notice of the authority and of the charge upon which the arrest is made, is chiefly to give the party an opportunity to desist from his illegal conduct, and peaceably to surrender to the official authority. When both the official character of the party making the arrest, and the charge upon which it is made, are known to the party arrested, notice would be an idle form, and is not required, at least, without demand. 1 Bish. Crim. Proc., secs. 647, 648, 649.
In Rex v. Woolmen (1 Moody, 334) it was held by a majority of the English judges, that a watchman whose official character was known, without a warrant, “ could legally arrest the prisoner without saying that he had a charge of robbery against him, though the prisoner had' in fact done nothing to warrant the arrest.” It was also held by the same tribunal, that an arrest for a misdemeanor under the vagrant act, which conferred power to arrest those “ who shall be found offending against the act,” was legal, where the circumstances were such that a man must know why he is about to be apprehended, and that in such case it was not necessary that he should be told. Rex v. Howarth, 1 Moody, 207.
We are therefore constrained to hold, that the court erred in instructing the jury, without qualification, that if the deceased was found violating the law, the attempt to arrest him was unlawful, unless he was first notified of the charge upon which the attempted arrest was made.
The charge of the court consists with the supposition that Lee was guilty, and that the attempted arrest was unlawful without such notice, even though the cause of arrest and the official character of the officer were both known to him.
It follows that the court also erred in charging without *260 qualification, that without such notice Lee might resist the attempted arrest, and that if, “ in such resistance, Lee fired upon the defendant, the defendant could not legally return the fire until he entirely desisted from the attempted arrest, in such manner that Lee could have reasonable notice that the illegal attempt to arrest him was abandoned.”
This charge is based entirely on the assumption, that express notice of the cause of arrest must in all cases be first given by the officer; and that without such notice it would be unlawful for him to use the force necessary to defend himself from the violence of the party resisting the arrest.
It follows that the judgment must be reversed, and the cause remanded for a new trial.
Beinkerhoff, O.J., and Scott, Welch, and White, JVT., concurred.